**UNITED STATES of America**
**Plaintiff–Appellee,**

v.

**Jeff Edward FORTENBERRY, Jr.,**
**Defendant–Appellant.**

**No. 87–4844.**

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1988.

Julie Ann Epps, Rienzi, Miss. (court-appointed), for defendant-appellant.

Joe M. Hollomon, George Phillips, U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before WISDOM, GEE, and RUBIN, Circuit Judges.

WISDOM, Circuit Judge:

This case asks whether the trial court erred in admitting evidence of extrinsic offenses when the prosecution did not establish that the defendant committed those offenses. Jeff Edward Fortenberry was convicted of conspiracy to commit arson and possession of an unregistered firearm; allegedly he had placed a small explosive device on a car belonging to his ex-wife's father. The car suffered negligible damage, and no one was endangered by the act. The jury also convicted Fortenberry for an unrelated instance of transporting a handgun on a commercial airline. The jury heard extensive testimony concerning attacks against Fortenberry's ex-wife, her attorney, her father, and the Chancery Court Judge who awarded custody of the Fortenberry children to his ex-wife. These acts caused damage to property and danger to safety far in excess of that resulting from the charged offenses. The government did not charge Fortenberry with committing them, nor did it prove that he committed them, but the evidence clearly was intended to imply that Fortenberry must have committed these acts. We conclude that the extrinsic evidence created undue prejudice that substantially outweighed its probative value.

## I.

This case grows out of Fortenberry's divorce in 1980 and the acrimonious custody battle that ensued. Initially Fortenberry received custody of his two sons. His ex-wife, Gloria Hudgins Fortenberry, later obtained legal custody of the children. She took physical custody of the boys in February 1985. She was awarded $13,575.61 in legal fees and back child support. To make those payments, Fortenberry's salary was garnished at a rate of $750 a month, $350 for child support, $400 for legal fees. Judge Paul Alexander of the Chancery Court of Hinds County, Mississippi granted Gloria Fortenberry both custody and the payments. Gary Thrash, an attorney in Jackson, Mississippi, represented Gloria Fortenberry throughout these proceedings.

Fortenberry had moved to Dallas, Texas after his divorce, where he worked for Delta Airlines. He was allowed to travel on Delta without paying. Hence, he often visited his children in Mississippi. He testified that he travelled to Mississippi every weekend beginning in February 1985.

A series of unusual incidents began several months after the children returned to Fortenberry's ex-wife. On November 1, 1985, a crossbow arrow broke through a window in Gary Thrash's house, landing a few feet from Thrash and his two-year old son. Another arrow was found in a window frame. Sometime in March 1986, Fortenberry's ex-brother-in-law found crossbow arrows embedded in the home of Fred Hudgins, Fortenberry's ex-father-in-law. Hudgins had provided his daughter with financial and emotional support during the divorce proceedings. On April 1, 1986, a small pipebomb exploded at Hudgey's Restaurant, which Fred Hudgins owned.

In the early morning hours of Sunday, April 20, 1986, the incident underlying this prosecution occurred. A small explosive device damaged Fred Hudgins's automobile. The car was unoccupied and parked in the driveway of his home. The next morning Hudgins noticed some debris in the driveway and thought someone had tried to siphon gasoline from his car. He drove the car to church and to his restaurant. Later that day, he called the police. The first police report listed the crime as "malicious mischief". A Bureau of Alcohol, Tobacco, and Firearms (BATF) agent testified at trial that, "The car was not rendered inoperable or heavily damaged at all, or damaged sufficiently at all". He said that a small piece of plastic, perhaps a

"mud or debris flap", had broken from the wheel well of the car. The explosive device was similar to the one exploded at Hudgey's Restaurant.

On July 4, 1986, another restaurant owned by Fred Hudgins was damaged by fire. The arson unit of the Jackson Fire Department determined that a device similar to that used on Hudgins's car and other restaurant had started the fire. Hudgins's restaurants had been in Chapter 11 the month before the fire. As a result of the fire, he received $32,000 from his insurance company. At the end of that same weekend, Gary Thrash, Gloria Fortenberry's attorney, returned home to discover that about 20 rounds of .22 caliber ammunition had been fired into his house.

On October 16, 1986, two crossbow arrows were found in Gloria Hudgins Fortenberry's home. On October 18, fire caused over $20,000 damage to Gary Thrash's home and destroyed two automobiles. No one was home when the fire occurred. The police found that the fire had been started by an incendiary device similar to those used on Hudgins's car and restaurants.

The Jackson Fire Department Arson Unit issued a warrant for Fortenberry's arrest. On October 23, 1986, BATF agents questioned Fortenberry at Dallas–Fort Worth Airport as he was about to board a plane for Jackson, Mississippi. Fortenberry agreed to turn himself in to Jackson officials the following day. When he arrived at the airport in Jackson he was arrested. A routine inventory of his suitcase revealed that it had contained a revolver when it was carried in the luggage compartment of

the plane. He contended that he became flustered when questioned at the Dallas–Fort Worth airport and forgot to leave the gun in his car, as he usually did.

A search of Fortenberry's apartment in Dallas discovered a notebook in which Fortenberry had said he felt he was at "war" with the people responsible for taking his sons. This passage was dated May 3, 1985.[1] The search also discovered papers on which Fortenberry had written the addresses and license plate numbers of Thrash, his ex-wife's attorney, and Alexander, the Chancery Court judge.

Fortenberry was charged with two counts arising from the vandalism of Fred Hudgins's car on April 20, 1986, conspiracy to commit arson and possession of an unregistered firearm. The firearm was the explosive device placed on Hudgins's car. He was also charged with violating airport safety statutes by carrying a handgun in his suitcase on October 23, 1986 without notifying the airline.[2] None of the other incidents were included in the indictment.

At trial, Donna Haymon, a Mississippi resident who dated Fortenberry in the spring and early summer of 1986, testified that Fortenberry admitted to placing a "firecracker" in Fred Hudgins's car. She testified that he had shown her a crossbow and that he boasted of often carrying guns onto airplanes. The government also introduced the documents found in Fortenberry's apartment. In addition, it argued that Fortenberry had attended a mercenary camp in March 1986. Much of the government's case, however, consisted of testimony and exhibits describing the crossbow

---

1. The diary entry reads:

In February of 1985, the sheriff's deputy picked up Tray and Trent in the school. I saw that I could not control my bitterness or hatred any longer, so I went to see—I believe it's supposed be a psychiatrist. Period. But even the medication was not strong enough to continue to keep me calm and easy. I could see the change in myself that everyone else had already seen. I knew that it was only a matter of time before I would destroy those who had destroyed me if things didn't change. I love my sons more than anything in the world, and I will not stand by and see them destroyed like they destroyed me. I continuously want revenge and blood. Even though I

never went to Viet Nam, I feel that I'm at war with a certain group of people and they have to be destroyed in order to stop this from continuing to other fathers.

2. The three counts were: conspiring to commit arson, in violation of 18 U.S.C. § 1952(a)(3); knowingly and unlawfully carrying an unregistered firearm, a pipebomb, in violation of 26 U.S.C. §§ 5861(d), 5871; and knowingly and unlawfully delivering a suitcase containing a Colt revolver to an airline for delivery to an unlicensed person (himself), without giving written notice to the airline, in violation of 18 U.S.C. §§ 922(e), 924.

attacks on the houses of Gary Thrash, Fred Hudgins, and Gloria Hudgins Fortenberry, the arson at Fred Hudgins's restaurants and Gary Thrash's home, and the .22 caliber bullets found in Thrash's home. The government did not prove that Fortenberry committed these extrinsic offenses. It argued that these attacks against people, linked only by their opposition to Fortenberry, singled out Fortenberry as the perpetrator. Fortenberry objected to this evidence. After a brief hearing, the trial judge admitted it.

Fortenberry was convicted on all three counts. He was sentenced to five years for conspiracy to commit arson, to run concurrently with an eight year sentence for possession of an unregistered firearm. In addition, he received a five year suspended sentence for failing to notify the airlines that he was carrying a weapon. This sentence will begin after his sentences on the first two counts end.

Fortenberry moved for a new trial and for an evidentiary hearing to evaluate the effectiveness of his trial counsel. These motions were denied. He appeals those denials on three grounds: that the evidence of the extrinsic offenses was improperly admitted; that he received ineffective assistance of counsel; and that the documents taken from his apartment were not covered by the search warrant.

## II.

■■■ Federal Rule of Evidence 404(b) governs decisions to admit evidence of extrinsic offenses.[3] *United States v. Beechum* declares that Rule 404(b) allows admission of extrinsic offense evidence only if two requirements are met: (1) the evidence must be relevant to an issue other than the defendant's character; and (2) its probative value cannot be "substantially outweighed by its undue prejudice" to the defendant.[4] We find that the external offenses evidence so dominated Fortenberry's trial that the prejudice it created "substantially outweighed" its probative value.

Fortenberry was charged with having placed a small device in an unoccupied car, one that did little damage to the car. The jury heard extensive testimony concerning three attacks with crossbow arrows, one of which nearly struck a two-year old child; three incidents of arson accounting for thousands of dollars in damage; and an act of vandalism with a .22 caliber rifle.

The government contends that the external offense evidence establishes a "pattern of activity" from which the jury can infer that Fortenberry committed the charged offense. The jury drew this inference for impermissible reasons, however. First, the external offenses are highly prejudicial. They are violent crimes, often directed at people or at least evincing callousness about the danger to people. They are also of a magnitude far greater than the charged offenses. In addition, they occupied more of the jury's time than the evidence of the charged offenses. The evidence is very likely to inspire exactly the "emotional" basis for a decision against which Rule 403 guards.[5] In terms both of time in the courtroom and capacity to impress the jury, this tail wagged the dog.

Second, the inference cannot be drawn reasonably within the bounds of the law. External offense evidence lacks probative value if "the jury could not reasonably find the preliminary fact to exist".[6] "[A]s a

3. Rule 404(b) provides:
   *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
   Probative evidence may be excluded if it is prejudicial. *See* Fed.R.Evid. 403.
4. 582 F.2d 898, 911 (5th Cir.1978) (en banc).

5. Fed.R.Evid. 403 advisory committee's note.
6. *Beechum,* 582 F.2d at 913 (quoting 21 C. Wright & K. Graham, Federal Practices and Procedures § 5504) (construing Fed.R.Evid. 104(b)). This Court has also phrased the standard the following way: External offenses evidence should be admitted if it would survive a motion for a directed verdict. *United States v. Zabaneh,* 837 F.2d 1249, 1262 (5th Cir.1988) (discussing standard for admitting external offense evidence when the defendant is not proven to have committed other offenses).

predicate to a determination that the extrinsic offense is relevant, the Government must offer proof demonstrating that the defendant committed the offense. If the proof is insufficient, the judge must exclude the evidence because it is irrelevant."[7] The government has presented no direct proof that Fortenberry committed the external offenses, and its circumstantial evidence is weak. Fortenberry admits to owning a crossbow but denies it was physically capable of firing the arrows presented as evidence. The government has made no effort either to prove that Fortenberry's crossbow could have fired the arrows admitted as evidence or to establish that Fortenberry had access to another crossbow. The government alleges that Fortenberry attended a school for mercenaries at which he learned how to shoot a crossbow and to make devices like those used in the extrinsic offenses. Fortenberry admits attending the school. An instructor from the school testified that explosives training was offered but could not remember whether Fortenberry had received that training. Fortenberry said he left the school before explosives training was offered. The instructor also denied that explosive devices of the sort used in this case were manufactured at the school, although an agent of the BATF testified that similar devices were found on the school premises by agents on an unrelated case. Fortenberry denied even seeing a crossbow at the school, and no one disputed him. A .22 caliber shell was found in the front seat of a car Fortenberry used in Mississippi. The government failed to meet its burden of proving that Fortenberry committed the external offenses.

The government has not even established that one person committed all the external offenses. Yet it relies on an inference from a "pattern" consisting of all the offenses. Fortenberry argues that Fred Hudgins may have set fire to his own restaurant to get the insurance money. The restaurant had been in bankruptcy the month before the fire. The arson at the restaurant is the single largest incident in the case. In the context of accusations that Fortenberry committed a series of violent acts, his accusation that another person committed one of them would receive little credence by a jury. The government's ability to accuse him of a list of offenses, none of which can individually be ascribed to him, suggests that Fortenberry will be prejudiced by every offense on the list, even if he has a reasonable claim to innocence on some or all of them.[8]

Of course, the "pattern of activity" may well have some probative value in this case. The third problem we find is that the government has not specified what the probative value of the evidence is. To have probative value, evidence of extrinsic offenses must prove the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident".[9] At different times, the government has defended the evidence as establishing motive, intent, opportunity, identity, and plan; in admitting the evidence, the trial judge listed all the elements listed in rule 404(b). *Beechum* requires us to determine whether the evidence's prejudicial effect "substantially" outweighs its probative value.[10] The government's inability to articulate the probative value of the evidence, as well as the weakness of the evidence linking Fortenberry to the extrinsic offenses, warrants the conclusion that the primary impact of the evidence on the proceedings was to increase the prejudice against Fortenberry.

█ The government's inability to explain the evidence's probative value emphasizes again the worth of the *Robinson* requirement that the reasons for admitting external offenses evidence be clearly artic-

---

**7.** *Beechum,* 582 F.2d at 912–13. *See also United States v. Jimenez,* 613 F.2d 1373, 1376 (5th Cir. 1980) (government has burden of proving defendant committed extrinsic offenses).

**8.** *See United States v. Sardelli,* 813 F.2d 654, 657 (5th Cir.1987) (introduction of defendant's 17 prior indictments for similar offense is undue prejudice because it overwhelms argument of innocence on charged offense).

**9.** Fed.R.Evid. 404(b).

**10.** *See Beechum, supra* note 4.

ulated on the record.[11] This rule demands that the trial court generate a record on the question and then describe in sufficient detail its reasons for admitting the evidence.[12] The government argues that the evidence proves Fortenberry's motive and opportunity. Faced with such a clear statement of the evidence's probative value, the trial court can weigh its value against its prejudicial effect. Here, Fortenberry admits he had motive and opportunity to commit the extrinsic offenses. The evidence is therefore redundant as proof of those elements and likely to be prejudicial.[13] Also, knowing what is in dispute, the court can help counsel focus their presentations and charge the jury more easily than it can otherwise. The *Robinson* requirement of articulation is therefore useful both to insure compliance with rules 403 and 404(b) and to enhance the efficiency of proceedings in the trial court. After a hearing that took only 5 pages of the trial transcript, the judge recited the elements listed in rule 404(b). This procedure neither sharpens the issues before the trial court nor helps reviewing courts decide if the trial court's decision abuses his discretion.

■ The prosecutor's closing statement exacerbated the prejudice. The prosecutor phrased his argument to emphasize that the evidence was being used to define Fortenberry's character: "This is the case of a man ..., Jeff Edward Fortenberry, who took the law into his own hands." The prosecutor said

> The name of his game is intimidation, harassment, and threats, and fear in controlling other people's lives. If they don't do what Jeff Fortenberry wants, he'll burn your house down, or he'll put a device on your car and blow it up, or he'll shoot crossbow arrows through your dining room window when you're watching TV. The only thing that these people who testified that came in this courtroom did was go into court, and Mr. Fortenberry disagreed with them. He decided he didn't like them and that they had to pay.

Throughout his argument, the prosecutor assumed that it was established that For-

11. *United States v. Robinson*, 700 F.2d 205, 213 (5th Cir.1983). Under *Robinson*, a defendant must request *Beechum* findings. *Id.* at 213. Although in *Robinson* itself the court regarded the defendant's objections as requests, *id.* at 214, this court has subsequently implied that the defendant must make a formal request that the trial court articulate its *Beechum* findings. *See Zabaneh*, 837 F.2d at 1262. The *Robinson* requirement is not so mechanical as to require a full-blown hearing and opinion at the defendant's request, however. It depends instead upon the court's sensitivity to the facts of the case before it. When the admissibility of external offense evidence is a close question, the court should say more, even without a request; it should pinpoint the element or elements listed in Rule 404(b) that the evidence will prove and explain why the evidence's probative value is not "substantially outweighed" by its "undue prejudice". Conversely, not even an objection and formal request can compel the court to spend more than a minimal amount of valuable judicial time on an issue whose outcome is not in doubt.

12. *See Zabaneh*, 837 F.2d at 1263 n. 17 (remanding because judge's explanation was "perfunctory"). The "on the record" requirement resembles the administrative law requirement that agencies make some decisions on the basis of "substantial evidence on the record". In part, that requirement demands that agencies justify their decisions solely on the basis of the evidence before them, rather than on the basis of their general experience or expertise. *See, e.g., Universal Camera Corp. v. National Labor Rel. Bd.*, 340 U.S. 474, 478–79, 71 S.Ct. 456, 459–60, 95 L.Ed. 456, 462 (1951) (discussing genesis of rule in labor law context). This is not the reason for the rule here, because judges are expected to decide solely on the record before them. In our present context, the more important function of the rule is that it forces agencies to develop a record for judicial review. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419–21, 91 S.Ct. 814, 825–26, 28 L.Ed.2d 136, 155–56 (1971) (remanding so district court can develop record of decision). This helps both the agency and the reviewing court and is the purpose we emphasize here.

13. *See Beechum*, 582 F.2d at 914. There, the government sought to introduce evidence establishing the defendant's intent. The defendant did not contest intent. This Court held that, "if the defendant's intent is not contested, then the incremental probative value of the external offense is inconsequential when compared to its prejudice ...". *Id. See also United States v. Neary*, 733 F.2d 210, 216–17 (2d Cir.1984) (reversing where prosecution introduced extrinsic offense evidence to establish defendant's knowledge and intent; defendant contested only identity).

tenberry had committed the external offenses. "He fired the arrow into Gary Thrash's home." He also said, "He's been running around destroying property, intimidating, threatening, harassing people for two years". The jury could have drawn the prejudicial inference the United States attorney hoped that they would draw. Rule 404(b) forbids the introduction of evidence that would allow the jury to draw this inference. And it may have reasoned from that premise to the conclusion that Fortenberry's character was in conformity with the character of the person who committed those acts. This is exactly the inference blocked by Rule 404(b).[14] Whatever probative value the extrinsic offense evidence has, the prosecutor's use of the evidence insured that its value was "substantially outweighed" by its undue prejudice.[15]

The judge's instructions to the jury did not reduce the prejudice. The judge instructed the jury that it should determine Fortenberry's mental state when committing the charged offense by its degree of confidence in its conclusion that Fortenberry committed the extrinsic offenses.[16] For-

tenberry concedes that this is an appropriate instruction for Count III, carrying a handgun on a commercial airliner without notifying the airline. He admitted that act but denied that he had the requisite state of mind. The instruction is inadequate, however, for Counts I and II. It does not tell the jury how to determine that Fortenberry committed the extrinsic acts. In any case, under *Beechum*, this is an issue for the judge to decide.[17] Even more relevant jury instructions would not cure the defect resulting from the judge's failure to apply *Beechum* correctly.

### III.

Fortenberry argues two other grounds for reversal. First, he contends that he received inadequate assistance of counsel. This is a difficult issue. Federal Rule of Criminal Procedure 33 authorizes a court to grant a new trial when a new trial would serve "the interests of justice".[18] A defendant appealing under that rule, as Fortenberry is, need not wait until after conviction to petition for a new trial.[19] In

**14.** Rule 404(b) forbids efforts to prove that the defendant's character is "in conformity" with bad acts.

**15.** We note that we do not find that the closing statement itself caused "undue prejudice" to Fortenberry. Reversal on the basis of a closing argument is justified only on a showing of actual prejudice. *See United States v. Veytia–Bravo,* 603 F.2d 1187, 1192 (5th Cir.), *cert. denied,* 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980). Fortenberry has not attempted such a showing. We conclude only that the prosecutor's use of the extrinsic offense evidence undercut its argument that the evidence had probative value. It also augmented the prejudice.

**16.** The relevant part of the instruction provides: The defendant is not on trial for any act or conduct not alleged in the indictment. Evidence that an act was done at one time or on one occasion is not evidence or proof whatever that a similar act was done at another time or on another occasion. That is to say, that evidence that a defendant may have committed an act similar to the acts charged in the indictment may not be considered by the jury in determining whether the accused in fact committed any act charged in the indictment, nor may evidence of some other act of a like nature be considered for any other purpose whatever, unless the jury first finds that the other evidence in the case, standing alone,

establishes beyond a reasonable doubt that the accused did the particular act charged in the particular count of the indictment under consideration at that point by the jury. If the jury should find beyond a reasonable doubt from other evidence in the case that the accused did the act charged in the particular count of the indictment under consideration at that point, then the jury may consider evidence as to an alleged act of like nature in determining the state of mind or intent with which the accused did the act charged in the particular county. Where proof of an alleged act of a like nature is established by evidence which is clear and conclusive, the jury may, but is not obliged to, draw the inference and find that in doing the act charged in the particular count under deliberation, the accused acted willfully and not because of mistake or accident or some other innocent reason.

**17.** *See supra* note 6.

**18.** Fed.R.Crim. P. 33.

**19.** *See Jackson v. United States,* 371 F.2d 960 (D.C. Cir.1966) (new trial granted on motion on ground of ineffective assistance of counsel); *United States v. Ostrer,* 422 F.Supp. 93, 95 (S.D. N.Y.1976) (upholding a defendant's right to move for new trial on grounds of newly discov-

this case, however, the record is insufficient for us to decide this issue. The record indicates that Fortenberry protested his counsel's conduct before the trial began. The trial court found that any difficulties with counsel were caused by Fortenberry's own "bad behavior". Fortenberry also argues that his counsel failed to produce alibi witnesses. We cannot determine whether trial counsel had sufficient reason for doing so, in part because there is no affadavit from trial counsel. Resolution of this issue should wait until the parties develop the record. This can best be done in post-conviction appeals.

■ Fortenberry also argues that the seizure of papers from his apartment violates his Fourth Amendment rights. The warrant did not authorize seizure of the evidence.[20] Nevertheless, "mere evidence" not described in a search warrant may be seized if it is "reasonably related to the offense which formed the basis for the search warrant".[21] One factor indicating that evidence is "reasonably related" is whether it illuminates the same crime as that prompting the search warrant or whether it aids in investigating a distinct crime.[22] Here, the government was looking for evidence tying Fortenberry to the vandalism of Fred Hudgins's car. The police could reasonably believe "that the evidence actually seized would aid them in accomplishing their purpose".[23]

Evidence not described in a search warrant may also be seized if a police officer "comes across" it in the course of an authorized search.[24] The record does not indicate that the police did not come across it. Accordingly, we reject Fortenberry's Fourth Amendment contention.

## IV.

■ The prejudice caused by the extrinsic offense evidence "substantially outweighed" its probative value. The denial of Fortenberry's motion for a new trial is therefore REVERSED. Before the new trial, the trial court should hold a hearing on the external offense evidence. At the hearing, the government should be required to specify the element or elements listed in rule 404(b) the evidence will prove. The court should admit evidence of an external offense only if a jury reasonably could find that the offense was committed by Fortenberry *independently* of the "pattern of activity" depicted by all the extrinsic offenses together with the charged offense. Finally, the court should examine carefully the risk of prejudice. The danger of prejudice is especially great with regard to elements Fortenberry does not contest. We reject Fortenberry's request for an evidentiary hearing to determine the effectiveness of his trial counsel and his Fourth Amendment argument. The judgment of

ered evidence against argument that defendant must await post-conviction relief).

20. The search warrant authorized seizure of: explosive and incendiary materials, fuse, components thereof, container components, manuals, notes and plans for the construction of such devices, Mercenary Association materials, correspondence, handouts and reference materials, a .22 caliber firearm and ammunition, crossbow and crossbow arrows which are evidentiary value into the investigation of Title 26, U.S.C. § 5861 and Title 18, U.S.C., § 1952.
This did not authorize the seizures Fortenberry disputes. The only papers described in the warrant are "notes and plans" for incendiary devices and "materials, correspondence, handouts and reference materials" associated with the "Mercenary Association". Fortenberry's writings and address sheets do not fall into either category. To include them in the warrant tortures the grammar of the warrant.

21. *United States v. Monroe,* 421 F.2d 644, 646 (5th Cir.), *cert. denied,* 400 U.S. 851, 91 S.Ct. 79, 27 L.Ed.2d 89 (1970). This is decided by looking at the reason the warrant was issued. *Id.*

22. *Compare United States v. Cantu,* 774 F.2d 1305, 1308 (5th Cir.1985) (admitting evidence not described in bench warrant where evidence was related to investigation underlying search warrant) *with Creamer v. Porter,* 754 F.2d 1311, 1318 (5th Cir.1985) (finding search "unreasonable" when it was extended to seizure of stolen items unconnected to investigation underlying search warrant).

23. *See Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

24. *Garland v. Maggio,* 717 F.2d 199, 206 (5th Cir.1983).

the trial court is REVERSED IN PART, AFFIRMED IN PART, AND the case is REMANDED for proceedings consistent with this opinion.