# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40430

United States Court of Appeals
Fifth Circuit

**FILED**

May 31, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

ANASTASIO MONSIVAIS,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:16-CR-512-1

Before BARKSDALE, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:*

Defendant Anastasio Monsivais was convicted of an attempt offense under 18 U.S.C. § 2422(b), which prohibits, inter alia, knowingly persuading, inducing, or enticing a person under the age of eighteen to engage in criminal sexual activity. He challenges the district court's decision to admit extrinsic-act evidence at trial and the court's failure to apply a three-point "attempt"

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-40430

reduction to his base offense level at sentencing.  We AFFIRM both his conviction and his sentence.

**I**

In March 2016, Department of Homeland Security Agent Jeffery Williams posed online as a thirteen-year-old girl named "Erin" as part of an undercover investigation.  At about 9:30 p.m. on March 31, 2016, Monsivais, who would have been able to see that "Erin" said she was thirteen, messaged her.  Monsivais told "Erin" that he was a truck driver, asked where she was from, and asked her for pictures.  Agent Williams sent pictures of a female undercover agent.  After seeing the pictures, Monsivais asked, "How old are you sweetheart[?]  You can't be more than twenty-two[.]  Okay maybe 25[.]"  "Erin" responded that she was thirteen.  Monsivais responded, "Wow!!  When I met my ex-wife her daughter was 12 years old but she look [sic] like she was 20[.]  [S]he was already well formed[.]  We became very close[.]"  "Erin" responded, "cool," and Monsivais continued, "She wanted me to teach you [sic] about all the things that men and women do together[.]  She wanted me to teach her[.]  And she was always rub [sic] her butt up against me[.]"

Monsivais went on to ask "Erin" questions of a sexual nature.  "Erin" responded favorably to Monsivais's questions, and soon he was describing in explicit detail sexual acts he wanted to do with "Erin," claiming that he had done the same things with his twelve-year-old stepdaughter.  Monsivais and "Erin" exchanged some more messages and pictures that night and the next day, eventually planning to meet in person.  They agreed to meet at a parking lot that "Erin" claimed was near her house.  Monsivais drove to the parking lot, where he was arrested.  Once he was in custody, Monsivais admitted to sending the messages, but denied believing that "Erin" was a minor.

Monsivais was indicted under 18 U.S.C. § 2422(b) for attempting to persuade, induce, entice, or coerce an individual who is under eighteen years

No. 17-40430

of age to engage in sexual activity in violation of Section 22.011(a)(2) of the Texas Penal Code.[1]  At trial, the Government's case rested mainly on the conversations between Monsivais and "Erin" and Monsivais's custodial statements.  The Government also presented evidence, obtained from Monsivais's cellphone, of his conversation with "Jane Doe," an apparent minor.[2]

The Jane Doe conversation, which took place via Facebook Messenger around the same time as the conversation with "Erin," was as follows:

Monsivais:  Good morning to you Miss [Jane Doe] how are you this morning sweetheart
Jane Doe:  I'm ok so how old are u
Monsivais:  I am 55 [Jane]
How old are you about 18 19 20
You might be a little bit older
Hey [Jane] are you there
Jane Doe:  Lol no read my profile
Monsivais:  I thought I did read it you still awake
I drive a truck for a living and I lost my signal there for a few hours
[smiley face]
Omg!! You are 12 years old
That's cool we can be friends right, boy have I got a story for you about a 12 year old that I knew once my stepdaughter!
I've been divorced for a while now but back then
Anyhow let me know if you're still awake

---

[1] We have held that the prosecution of a § 2422(b) offense based on a conversation with an adult law enforcement agent posing as a minor is not subject to a legal impossibility defense. *United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001).

[2] The court has used a pseudonym due to the possibility that Jane Doe is a minor. Aside from what is discussed below, the Government did not produce evidence that the person conversing with Monsivais was actually twelve years old.  However, Monsivais did not produce any evidence tending to show that Jane Doe was misrepresenting her age.

No. 17-40430

The prosecution also introduced a screenshot of Jane Doe's Facebook profile, which included a picture of a very young-looking girl and the statement, "I'm 12 I like to have fun I'm silly and I goofy."

The defense objected to the admission of the conversation, arguing that it was not admissible for any non-propensity purpose, *see* FED. R. EVID. 404(b), and that, even if the conversation were admissible for such a purpose, its prejudicial effect would substantially outweigh any probative value, *see* FED. R. EVID. 403. The defense also objected to the screenshot of the profile as cumulative and prejudicial. The district court ruled that the Jane Doe conversation was admissible, apparently inferring that Monsivais's mention of his twelve-year-old stepdaughter suggested his intent to tell Jane Doe about having sex with his stepdaughter and concluding that the evidence had "a lot of meat in there pertinent to the case." The court also ruled that the screenshot of the profile was admissible. Neither side requested, and the district court did not give, a specific limiting instruction for the Jane Doe evidence.

In its closing argument at trial, the defense argued that the Government failed to meet its burden of proving that Monsivais believed that "Erin" was a minor. The defense argued that Monsivais believed that he was having a sexual conversation with an adult woman pretending to be a child, emphasizing that the pictures of "Erin" did not appear to portray a thirteen-year-old girl and that Monsivais said to "Erin" that he thought she was "22 or 25." Defense counsel also argued that the Government had entrapped Monsivais.

In its rebuttal summation, the Government emphasized the Jane Doe evidence, "If you all have any lingering doubt in you all's mind about this Defendant's predisposition to want to have sex with children, or if you have any lingering doubt that this was an honest mistake, I don't think you need to go any further than the [Jane Doe] conversation." After putting up a picture

of the conversation as it would have appeared on Monsivais's phone, which included a thumbnail picture of Jane Doe, the Government pointed to similarities between what Monsivais told Jane Doe and what he told "Erin," highlighting his mention of his stepdaughter.    Finally, the Government contended that, based on the picture of Jane Doe, it was unbelievable that Monsivais thought that Jane Doe "was 18, 19, or 20 years old," suggesting that Monsivais was following "a script he has . . . to entice children."

The jury unanimously found Monsivais guilty.    At sentencing, the district court imposed a 130-month, within-Guidelines sentence.    Monsivais timely appealed.

## II

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."    However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2).    Even if evidence is admissible under Rule 404(b)(2), under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."    A district court's admission of extrinsic-act evidence over a Rule 404(b) objection is reviewed under a "heightened" abuse of discretion standard, which requires that evidence be "strictly relevant" to the charged offense.    *United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003) (first quoting *United States v. Wisenbaker*, 14 F.3d 1022, 1028 (5th Cir. 1994); then quoting *United States v. Hays*, 872 F.2d 582, 587 (5th Cir. 1989)).    Conversely, a district court's Rule 403 ruling will be reversed "only rarely and only when there has been a clear

No. 17-40430

abuse of discretion." *United States v. Lewis*, 796 F.3d 543, 545 (5th Cir. 2015) (quoting *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008)).

## A

Monsivais first claims that the Jane Doe conversation and profile picture were not admissible under Rule 404(b) because they were not relevant for any purpose other than to show his propensity to initiate online conversations with young girls. This evidence, however, is highly relevant to the critical disputed issue: whether Monsivais believed he was talking to a minor during his conversation with "Erin."

Monsivais does not contest that Jane Doe's profile depicts a very young-looking girl. Nor could he. Jane Doe's profile picture, which was displayed in the Messenger app and on her profile page, portrays a girl with a round face whose adult teeth appear to be still growing in. She is wearing a pastel-colored tee-shirt depicting a cartoon cookie and a cartoon milk carton. It is highly improbable that a person who viewed Jane Doe's Facebook profile—which expressly states that she is twelve—would believe that Jane Doe was older than eighteen.[3]

In his conversation with Jane Doe, Monsivais indicated that he had viewed Jane Doe's profile but nonetheless asked her if she was "18 19 20" or "a little bit older." At trial, Monsivais relied on an early message that he sent to "Erin" in which he said, "How old are you sweetheart[?] You can't be more than twenty-two[.] Okay maybe 25[,]" contending that this was reflective of his actual belief that she was an adult. Monsivais's parallel statements to Jane Doe make this argument less plausible.

---

[3] The Government adduced sufficient evidence from which a reasonable jury could conclude that the conversation occurred, and Monsivais does not claim otherwise. *See* FED. R. EVID. 104(b). And because the conversation provides a sufficient basis for a jury to conclude that Monsivais viewed Jane Doe's profile, the profile is also relevant. *See id.*

Monsivais also told Jane Doe that he had "a story" about when his stepdaughter was twelve. This was a topic Monsivais brought up early on in his conversation with "Erin" as well. Monsivais's immediate mention of his twelve-year-old stepdaughter to Jane Doe, someone he likely believed was a child, supports that he also believed "Erin" was a child.

Furthermore, Monsivais's only stepdaughter was in her forties at the time of his conversation with Jane Doe. It thus seems odd that Monsivais's first thought when encountering a child would be to mention a time, decades ago, when he had a young stepdaughter. And when "Erin" responded to Monsivais's comments about his stepdaughter, he followed up with explicit descriptions of having sex with his stepdaughter. A reasonable jury could conclude from this evidence that had Jane Doe continued to participate in the conversation, Monsivais would have also told her that he had had sex with his twelve-year-old stepdaughter. This rebuts Monsivais's contention that he only told "Erin" about having sex with his stepdaughter to facilitate the sexual fantasy of someone he believed was an adult pretending to be a child.

In these ways, the Jane Doe evidence was relevant to demonstrate that Monsivais in fact believed that "Erin" was a thirteen-year-old girl; it does not just show his propensity to talk to underage girls. Accordingly, the district court did not abuse its discretion in finding the evidence admissible under Rule 404(b) for a purpose other than propensity.

**B**

Monsivais argues that even if the Jane Doe evidence was relevant to an issue other than propensity it ought to have been excluded under Rule 403. Monsivais contends that the probative value of the Jane Doe evidence was "barely detectable" and that the Government's need to resort to it was low, given the direct evidence of Monsivais's belief as to "Erin's" age. As noted, Monsivais's principal argument below was that he did not believe that "Erin"

was a minor.  While it is true that the Government had some direct evidence of Monsivais's belief that "Erin" was a minor, some of the pictures "she" sent portray a woman who appears significantly older than thirteen, and Monsivais made comments like, "You do not look 13."  Thus, we cannot say that the Government did not need to resort to extrinsic evidence relevant to the central disputed issue at trial.

For reasons already discussed, the Jane Doe evidence was generally probative of Monsivais's belief regarding "Erin's" age and it was directly responsive to several of Monsivais's defenses.  The Jane Doe evidence rebuts the argument that his statements to "Erin" about her age accurately reflected his beliefs and contradicts his contention that he only brought up having sex with his twelve-year-old stepdaughter to facilitate a roleplaying scenario initiated by "Erin."  In light of Monsivais's own arguments, then, the Jane Doe evidence is highly probative.  *See United States v. Wolford*, 386 F. App'x 479, 484 (5th Cir. 2010) (defendant's roleplaying defense imbued his statements that he was interested in having sex with minors and that he had previously raped a minor "with great probative value").

Monsivais claims that, regardless of its probative value, the Jane Doe evidence was unfairly prejudicial and likely "to mislead the jury and confuse the issues," as its introduction encouraged the jury to associate Monsivais's behavior with Jane Doe, rather than an agent posing as a minor.  To be sure, there is inherent prejudice in introducing evidence that Monsivais approached Jane Doe, in light of her young-looking picture.  However, Rule 403 does not require the exclusion of *any* prejudicial evidence, only that which carries such a great risk of prejudice that it substantially outweighs the probative value.  As explained below, we cannot say that the prejudicial aspects of the Jane Doe evidence are so great as to substantially outweigh its significant probative value.

No. 17-40430

The oft-cited indicators of unfairly prejudicial evidence include the heinousness, vel non, of the extrinsic act; its magnitude relative to the offense conduct; and the extent to which the evidence occupied the jury's time at trial. *See, e.g.*, *United States v. Fortenberry*, 860 F.2d 628, 632 (5th Cir. 1988). Those hallmarks are lacking here. In contrast to the evidence supporting the offense conduct, which included sexually explicit descriptions of statutory rape, the conversation with Jane Doe is not especially inflammatory. As it was not explicitly sexual, the jury was unlikely to believe, for example, that Jane Doe had suffered psychological harm as a result of Monsivais's actions and, accordingly, less likely to want to punish Monsivais for this conduct. *See* FED. RULE EVID. 403, Advisory Committee's Notes to 1972 Proposed Rules ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."); *cf. United States v. Grimes*, 244 F.3d 375, 385 (5th Cir. 2001) ("Normally, the danger of a jury's reprisal for unpunished extrinsic activity is likely to be less when the activity is merely 'bad' and not criminal."). Nor did the Jane Doe evidence consume much of the trial. *See Fortenberry*, 860 F.2d at 632.

With respect to the profile picture, Monsivais argues that the only information conveyed was cumulative of the conversation exhibit. However, the profile picture is much larger and clearer than the thumbnail displayed in the conversation exhibit and the profile also contains the childish statement "I'm 12 I like to have fun I'm silly and I goofy." Both differences have a tendency to prove that Monsivais believed that Jane Doe was twelve.[4]

---

[4] Monsivais also complains that the prosecution failed to provide proper notice that it would seek to introduce the picture of Jane Doe's profile, though it is unclear whether he is arguing that the lack of notice resulted in reversible error. Assuming he is making this argument, he concedes that he did not raise it below, and thus our review would be for plain error. *See United States v. Hernandez*, 690 F.3d 613, 620 (5th Cir. 2012). As he does not explain how any error was plain, how it affected his substantial rights, or why we should

No. 17-40430

To the extent the jury might be tempted to punish Monsivais for his conversation with Jane Doe, the district court's instructions helped to abate this danger. The court instructed:

> I caution you that you are here to decide only the guilt or innocence of the Defendant. First of all, he's not on trial for any other act or offense that's not charged here. There were discussions about things he—in his own mouth about things that he may or not have done on other occasions, but he's not on trial for anything like that. He's on trial only for what happened or didn't happen in this particular case that we've heard all day long about.

While certainly not as curative as it could have been,[5] this instruction at least reminded the jury to focus on the offense conduct. *See United States v. Tafoya*, 757 F.2d 1522, 1527 & n.7 (5th Cir. 1985) (holding that a similarly imprecise instruction helped to alleviate prejudice).

Finally, Monsivais argues that the prosecutor "expressly argued propensity," thereby increasing the probability that the jury would use the Jane Doe evidence for that impermissible purpose. It is true that the Government appeared to argue that the Jane Doe evidence supported propensity, encouraging the jury to use the Jane Doe evidence to evaluate Monsivais's "predisposition to want to have sex with children." The Government also seemed to imply at trial that the evidence actually proved that there was an attempted enticement of Jane Doe, asserting in its rebuttal argument that in his conversation with Jane Doe, Monsivais "was following a script. It's a script he has basically to entice children. You know, it's a plan that he puts out, you know, who knows how many times." Though we are

---

exercise our discretion to correct the alleged error, he has forfeited any such argument. *See, e.g.*, *United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006).

[5] We note that, even though the parties did not request a limiting instruction, this is a case in which it would have been appropriate for the court to explain the limited permissible uses of the Jane Doe evidence.

troubled by aspects of this summation, our disposition today does not hinge on the propriety of the prosecution's closing argument, but on the propriety of admitting the Jane Doe evidence.  Even accepting that a closing argument can render evidence inadmissible under Rule 403,[6] the focus of the prosecution's closing argument was that the statement to "Erin" that she looked older appears disingenuous in light of the Jane Doe evidence.  Thus, while certain statements appear to invite impermissible propensity inferences, the improper aspects of the closing argument did not predominate over the probative aspects of the closing argument.

To demonstrate reversible error, Monsivais must show that the evidence was "*substantially*" more prejudicial than probative, *see United States v. El-Mezain*, 664 F.3d 467, 508 (5th Cir. 2011), and that the district court's judgment to the contrary constituted a "clear abuse of discretion," *United States v. Curtis*, 635 F.3d 704, 716 (5th Cir. 2011) (quoting *United States v. Setser*, 568 F.3d 482, 495 (5th Cir. 2009)).  While the Jane Doe evidence presented some danger of unfair prejudice, in light of its significant probative value, we cannot conclude that the district court committed a clear abuse of discretion.  Accordingly, we find no reversible error in the district court's admission of this evidence.

## III

Monsivais argues that the district court erred by failing to apply a three-point base-offense-level reduction under U.S.S.G. § 2X1.1(b)(1).  Because, as Monsivais concedes, he did not raise this objection with the district court, we review the claimed misapplication of the Guidelines for plain error.  *See United States v. Hernandez*, 690 F.3d 613, 620 (5th Cir. 2012).  To establish plain

---

[6] We have held that a closing argument can "augment[]" prejudice, but that "[r]eversal on the basis of a closing argument is justified only on a showing of actual prejudice." *Fortenberry*, 860 F.2d at 635 n.15.  Monsivais does not attempt this showing.

error, Monsivais must show: (1) an error or defect "that has not been intentionally relinquished or abandoned"; (2) that the legal error was "clear or obvious, rather than subject to reasonable dispute"; and (3) that the error affected his substantial rights. *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).  If these three elements are satisfied, this court may remedy the error "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Puckett*, 556 U.S. at 135).

Attempt offenses are generally governed by § 2X1.1(b)(1), which provides that, if a defendant is convicted of attempt, his offense level should be decreased "by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense . . . ."  The Government does not contest that, by its terms, § 2X1.1 applies to Monsivais's offense. *Accord United States v. Crayton*, 143 F. App'x 77, 79–81 (10th Cir. 2005) (upholding application of § 2X1.1 to 18 U.S.C. § 2422(b) attempt offense).  The parties only dispute whether Monsivais believed he had completed all the acts that, had they in fact been completed, would be sufficient to convict him for the substantive offense. *See* U.S.S.G. § 2X1.1(b)(1).

18 U.S.C. § 2422(b) criminalizes "using the mail or any facility or means of interstate or foreign commerce . . . [to] knowingly persuade[], induce[], entice[], or coerce[] any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempt[ing] to do so."  "[Section] 2422(b) criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions vis-à-vis the actual consummation of sexual activities with the minor." *United States v. Howard,* 766 F.3d 414, 420 (5th Cir. 2014) (quoting *United States v. Dwinells*, 508 F.3d 63, 71 (1st Cir. 2007)).  The focus

of the offense is "persuading the minor to assent to sexual contact." *United States v. Broussard*, 669 F.3d 537, 548 (5th Cir. 2012).

We find it did not constitute clear or obvious error to fail to apply a three-point reduction, as the evidence reasonably supports that Monsivais believed he had successfully persuaded "Erin" to assent to sexual contact. Monsivais argues that the evidence does not show that he believed that he had successfully completed the substantive offense because, "from his perspective, he had still to meet with ["Erin"], travel somewhere with her, and then convince her to actually engage in the [sex] act." But Monsivais's conversations with "Erin" were explicitly sexual and appeared to anticipate that, upon meeting, he and "Erin" would have sex. Monsivais told "Erin" that he had had sex with his stepdaughter in his truck and suggested that his experience with his stepdaughter was something that he would like to recreate with "Erin," which reasonably suggests that he might have thought "Erin" assented to having sex in his truck. In any case, that "Erin" might change her mind en route to another location does not affect that, in making concrete plans to meet "Erin" near her house and getting "Erin" to agree to show up for a sexual rendezvous, Monsivais had already apparently "persuad[ed her] to assent to sexual contact." *Id.*

Monsivais said after he was arrested that he did not think "Erin" would actually show up, which is countervailing evidence of his beliefs regarding Erin's assent. But our review is for plain error only. Monsivais does not cite, and we are not aware of, any case that supports his arguments. "[G]enerally, 'if a defendant's theory requires the extension of precedent, any potential error could not have been plain.'" *United States v. Guillen-Cruz*, 853 F.3d 768, 772 (5th Cir. 2017) (quoting *United States v. Guzman*, 739 F.3d 241, 246 n.8 (5th Cir. 2014)) (internal quotation marks omitted). Because under the existing caselaw there is room for reasonable debate about whether Monsivais qualified

for a reduction under § 2X1.1(b)(1), any error cannot have been clear or obvious. *Cf. Broussard*, 669 F.3d at 550 ("[A]s we have never addressed whether obtaining a phone number and having conversations with a minor about meeting for illicit sexual activity constitutes a substantial step toward persuading a minor to engage in illicit sexual activity under § 2422(b) . . . any error [with respect to the sufficiency of the factual basis for a guilty plea] . . . could not be plain."). Accordingly, Monsivais has failed to carry his burden on plain-error review.

**\*\*\***

For these reasons, we AFFIRM Monsivais's conviction and sentence.