889 F.2d 1457
 29 Fed. R. Evid. Serv. 545, Prod.Liab.Rep.(CCH)P 12,331
Cindy MYERS, Individually and as Natural Tutrix of her minor
daughter, Danette L. Myers, Plaintiff-Appellee,
v.
PENNZOIL COMPANY, et al. Defendants,
Commercial Shearing, Inc. and The Continental Insurance
Company, Defendants-Appellants.
 No. 89-4135.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 12, 1989.
Rehearing Denied Jan. 22, 1990.
 
 1
 William O. Bonin, Landry, Watkins & Bonin, Iberia, La., for defendants-appellants.
 
 
 2
 Jimmy L. Dauzat, Brinkhaus, Dauzat, Falgoust & Caviness, Opelousas, La., for plaintiff-appellee.
 
 
 3
 On Appeal from the United States District Court for the Western District of Louisiana.
 
 
 4
 Before DAVIS and SMITH, Circuit Judges, and LITTLE, District Judge.[1]
 
 LITTLE, District Judge:
 I. FACTS
 
 5
 While working on a stationary platform in the Gulf of Mexico, Dwayne Myers suffered fatal injuries. Pennzoil Company, the rig owner, engaged Loffland Brothers Co., Myers' employer, to drill a well. The equipment employed to perform the drilling function was owned by Loffland. As is usual with mineral exploration and discovery, sections of drilling pipe are screwed together to provide the lengthy shaft from the drilling rig to the hole deep in the earth's crust. To screw the pipe sections together, the employees of Loffland used a Kelly Spinner. This piece of equipment would spin a section of pipe into the end of another stationary piece of pipe.
 
 
 6
 In November of 1985 Myers was working as a floorhand on the Pennzoil rig in the area of the Kelly Spinner. A fellow worker playing the control panel which operates the Kelly Spinner started an electric motor which moves an hydraulic pump so that the Kelly Spinner would be energized to connect two pieces of pipe. The operator is not in eye contact with the Kelly Spinner. The employee maneuvered in this fashion believing his action to be safe in that a valve, known as a Wabco valve, which he could and did see, was in the neutral position. By analogy, the employee's action was similar to one starting his automobile with the gearshift in the neutral position.
 
 
 7
 Unfortunately, and unexpectedly, the Kelly Spinner activated, wrapping and squeezing Dwayne Myers in steel cables. Although Myers was extricated and immediately hospitalized, he did not survive the gruesome event.
 
 
 8
 Myers' surviving spouse filed on behalf of herself and her minor child against a number of entities including the extant defendant Commercial Shearing, Inc., the manufacturer of the alleged errant valve. All other defendants and the intervenor settled with the plaintiff prior to trial and were dismissed.
 
 
 9
 The jury found for the plaintiff and against Commercial Shearing, Inc. concluding that Commercial Shearing was 85% at fault under principles of strict liability for manufacturing a defective product which caused the accident and under principles of negligence. Parties previously involved and subsequently released through settlement were also addressed in the jury interrogatories. The jury found C.H. Foster, the manufacturer and vendor of the equipment system in which the Commercial Shearing valve had been incorporated, 15% at fault. The jury also found Loffland Brothers, Wabco, Inc., Pennzoil, Inc. and the decedent all without fault.
 
 
 10
 The gross sums awarded by the jury included $50,000 for the decedent's pain and suffering and $725,000 for the damages suffered by the wife and the child. The judgment also awarded plaintiff prejudgment interest. Defendant's motions for a directed verdict, judgment n.o.v. and new trial were denied as well as certain motions during trial. All denials form the basis of this appeal. The appellant and appellee agree, however, that the judgment provision awarding prejudgment interest is in error.
 
 
 11
 II. MOTIONS FOR DIRECTED VERDICT AND JUDGMENT N.O.V.
 
 
 12
 The standard to be employed in this circuit when considering motions for directed verdict and judgment notwithstanding the verdict is set forth in Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir.1969) (en banc). The guidance given by that case is well worth repeating:
 
 
 13
 On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence--not just that evidence which supports the non-mover's case--but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.
 
 
 14
 The record in its entirety, not just the naked portions supporting defendant's motion, must be examined and the evidence considered in a light most favorable to the plaintiff. Governed as we must be by the Boeing standards, sufficient facts appear in the record to support the conclusions of the jury.
 
 
 15
 The valve in question was manufactured by Commercial Shearing for use in the irregular and corrosion causing climes of the Gulf of Mexico. Well within its useful commercial life, the valve was operated in a manner which the manufacturer could reasonably envision. Corrosion occurred, the valve failed to close and remained in an energized position. This condition would be contrary to the normal and reasonable expectations of the users and produced an unreasonable risk of harm. The condition could have been avoided by implementation of other inexpensive available means. The manufacturer failed to warn of the valve's inherent dangers. All of these conclusions are amply supported by record evidence. It is true that there is evidence to the contrary. The evidence in favor of the plaintiff's case, however, was subject to biting, searching and exhaustive cross-examination by able counsel for the defense. The jury could, and evidently did, accept the plaintiff's theory and the believable evidence submitted to support that theory.
 
 III. STRICT LIABILITY AND NEGLIGENCE
 
 16
 The jury sided with the plaintiff on the issues of strict liability and negligence. The record establishes that satisfactory evidence was presented to support a finding of strict liability on the defendant manufacturer. Defendant admits all of the following four tests must be passed by the plaintiff before strict liability is applicable under Louisiana law.
 
 
 17
 1. The valve was defective and unreasonably dangerous in normal use.
 
 
 18
 2. The defect existed when the valve was shipped by the valve manufacturer.
 
 
 19
 3. The valve was in normal or foreseeable use at the time of the accident.
 
 
 20
 4. The defect was the cause of the accident.
 
 
 21
 The plaintiff presented evidence by expert witnesses that the valve corroded, hung up and remained in an open and dangerous position. The tendency to corrode was inherent in the valve when it left the hands of the manufacturer, and that defect caused the accident. Defendant's expert acknowledged that the valve would be used with a manual or remote control and that the valve was sold with or without manual, as opposed to remote, operating accessories. Further, a manual operation could be converted to a remote operation. Again, we observe that there is evidence to the contrary on all of these issues but one fact is clear: convincing qualified testimony is in the record to support the jury determination on the issues of strict liability. Accordingly, since we affirm the strict liability conclusion, we need not consider the determination found on negligence.
 
 IV. IMPEACHMENT TESTIMONY
 
 22
 Plaintiff elicited testimony from witnesses who were aligned and hired by former parties defendant in these proceedings. Those parties had been released by settlement with the plaintiff. The testimony from the witnesses, called by the plaintiff, was other than beneficial to the defendant. Counsel for defendant sought to impeach or discredit the testimony of those witnesses by disclosing to the jury that the witnesses had previously been aligned as parties adverse to the plaintiff and that their current testimony is different than that which they had previously intended to give when they were among the hunted. Over counsel's vociferous objection, the court denied the disclosure of a settlement. The court advised the attorneys as follows:
 
 
 23
 I think you will be allowed to cross-examine Mr. Pheffer completely on his relationship with the manufacturer of Wabco, the fact that he was employed by them, the fact that he examined, made an examination of this valve and a lawsuit being brought against his employer. The only thing I am going to ask, Mr. Bonin, is that you not mention the fact that a lawsuit was actually filed against his employer because if we do that and the jury will then say, why isn't Wabco here, it's going to be a natural speculation and would prejudice the jury against the plaintiffs. What we want in this case is to find out primarily if your client was negligent at all, Commercial Shearing, if it was liable at all. That's the purpose of this inquiry. If Commercial Shearing is not liable, if the valve is not defective, if it was reasonably fit for the purposes which it was intended when it left your hands, then you are out; and as I told you earlier, had it not been for the testimony of one of the witnesses who said that in his opinion the valve was defective because of the quality of the metal used, I believe, in the spool, I would have granted your motion for verdict at the close of plaintiff's case. We did have a question for the jury. The jury has that question to decide, and that's the only question we are going to decide. And I don't want to bring out to the jury that Wabco was sued. You may bring out in examining your witness, show his bias and prejudice in favor of his employer, bring out the fact that they paid his salary, that he was sent out here to examine that valve, to look into this whole thing, to participate in the tests, and his sole aim was to exonerate Wabco throughout. You may question him on his credibility all you like. Except, I don't want you to bring out the fact that Wabco was sued in this proceeding.
 
 
 24
 The jury was acquainted with the fact that each witness was identified with an entity other than the plaintiff and was cross-examined thoroughly. The verdict form required that the jury weigh the fault of other non-parties to the litigation. Those non-parties were those identified with the witnesses called by the plaintiff.
 
 
 25
 Federal Rules of Evidence 408 prohibit introduction of evidence of compromise of a disputed claim:
 
 
 26
 Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration and compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or in validity of the claim or its amount. Evidence of conduct or statements made in compromised negotiations is likewise not admissible.
 
 But the rule also provides an exception:
 
 27
 This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.
 
 
 28
 Defendant wants to introduce the fact of settlement to prove bias or prejudice. Admission or denial of the evidence is within the discretion of the trial court. That decision will not be reversed absent a finding of abuse amounting to manifest error. Reichenbach v. Smith, 528 F.2d 1072, 1074 (5th Cir.1976). The trial court, as evidenced by the quoted language, was concerned about jury confusion and with the jury's need of information for evaluating the credibility of a witness. The trial judge was sensitive to the situation and afforded the defendant wide latitude in conducting his cross-examination. On balance, we conclude that the limiting rule was not an abuse of discretion. Harmful error is absent.
 
 
 29
 To the same effect it was not manifest error for the district judge to allow Jack Pfeffer to testify as an expert witness for the plaintiff in rebuttal. Defendant knew Pfeffer's opinions, having been given a copy of his report months before the trial. No support for the defendant's complaint of surprise or prejudice by the appearance by a rebuttal witness is found in the record.
 
 V. REMEDIAL MEASURES
 
 30
 Subsequent to the accident Loffland recognized the unsafe manner of operation of the Kelly Spinner by its employees and, according to defendant, instituted corrective action. Defendant sought to introduce evidence of the post-accident remedial measures in order to demonstrate Loffland's high degree of complicity in the accident. Defendant was prohibited from doing so. The trial judge ruled that Federal Rules of Evidence 407 prohibited introduction of post-accident corrective action. The prohibition of that rule applies only to a party and Loffland was not a party at the time the evidence was offered. The ruling of the trial judge was not an abuse of discretion. The law of Louisiana applicable at the time this accident arose did not permit an inquiry into the employer's fault, as the employer's responsibility vis-a-vis the injured party was limited to workman's compensation; as to any other joint tort-feasor, the employer is not bound to contribute in any way. This is the mandate of article 2324. Plainly, the employer is immune from tort liability. See Weber v. Caterpillar Machinery Corp., 542 So.2d 544 (La.App. 5th Cir.1989); Snyder v. Taylor, 523 So.2d 1348, 1355 (La.App.2d Cir.1988); Senez v. Grumman Flexible Corp., 518 So.2d 574, 577 (La.App. 4th Cir.1987), writ denied, 521 So.2d 1151 (La.1988); Chatelain v. Project Square 221, 505 So.2d 177, 186 (La.App. 4th Cir.1987); Franklin v. Oilfield Heavy Haulers, 478 So.2d 549 (La.App.3d Cir.1985), writs denied, 481 So.2d 1330 (La.1986); and Morrison v. J.A. Jones Construction Co., 537 So.2d 360 (La.App. 4th Cir.1989).[2] Thus, the fault of the employer is immaterial to the determination of liability and evidence concerning the employer's fault, even though not a party, was correctly omitted.
 
 VI. JURY INSTRUCTIONS
 
 31
 Defendant complains about the trial court's failure to give certain jury instructions. Reviewing the charge in its entirety we find the jury instructions adequately present the applicable law. Koonce v. Quaker Safety Products & Mfg., 798 F.2d 700 (5th Cir.1986).
 
 VII. DAMAGES
 
 32
 Defendant complains that the $50,000 jury award for Dwayne Myers' pain and suffering is reversible as there was no evidence of conscious pain and suffering and that the awards to the surviving spouse and child are also excessive. Evidence abounds that the deceased fought against the constricting cables which were lacerating his body. His death was not instantaneous. Unless persuaded that the jury's decision is a clear abuse of discretion, we must accept their determination. Ward v. Buehler, 472 F.2d 1170, 1171 (5th Cir.1973). We are not persuaded that the jury's determination of quantum is such an abuse and decline to adjust the awards.
 
 VIII. INTEREST
 
 33
 The parties agree the paragraph of the judgment awarding interest is in error. Louisiana Civil Code article 2924 B(2) provides for legal interest on suits filed and pending between 1981 and 1 January 1988 at 12% and thereafter at a variable rate. The judgment provided for interest at 12% from 23 July 1986 to date of judgment which was 14 December 1988 and is obviously excessive and contrary to law.
 
 IX. SUMMARY
 
 34
 This lengthy trial was ably contested by the parties and their legal representatives. Superb preparation and personal injury trial skills were amply demonstrated by the attorneys. Was it a perfect trial? No, but "the fault, dear Brutus, is not in our stars, But in ourselves, that we are underlings."[3] Reversible error is absent.
 
 X. CONCLUSION
 
 35
 For the foregoing reasons, the judgment of the district court is AFFIRMED in all respects except the judgment awarding interest is REVERSED and REMANDED to the district court for interest calculation in accordance with Louisiana Civil Code article 2924 B(2).
 
 
 
 [1]
 District Judge of the Western District of Louisiana, sitting by designation
 
 
 [2]
 Article 2324 was the subject of legislative amendment in 1987 which may provide a different result than that expressed in this opinion. However, the 1987 amendment has been interpreted to be prospective only in its application and would play no part in our determination of this issue. See Morrison v. J.A. Jones Construction Co., Inc., supra at 365; Eskine v. Regional Transit Authority, 531 So.2d 1159, 1161-62 (La.App. 4th Cir.1988); and Reed v. Shell Offshore, Inc., 872 F.2d 680, 683 (5th Cir.1989). Further, we are not unmindful of the analysis of the ruling in Nance v. Gulf Oil Corp., 817 F.2d 1176 (5th Cir.1987) which appears in the recent case of Reed v. Shell Offshore, Inc., supra at 682
 
 
 [3]
 W. Shakespeare, Julius Caesar, Act I, scene 2, line 134