**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Billy Wayne ANDERSON, Jerry Dennis Thomas, Michael Lynn Thomas, and Larry Austin Thomas, Defendants–Appellants.**

No. 90–1347.

United States Court of Appeals, Fifth Circuit.

June 7, 1991.

Rehearing Denied July 12, 1991.

John H. Hagler, Michael P. Carnes, Dallas, Tex., for Billy Wayne Anderson.

D. Mark Elliston, Horton Ormesher & Elliston, Dallas, Tex. (Court-appointed), for Jerry Dennis Thomas.

Wes Reed, Dallas, Tex., for Michael Lynn Thomas.

Wayne Ames, Allen, Tex., Richard B. Roper, Joe C. Lockhart, Asst. U.S. Attys., Marvin Collins, U.S. Atty., Fort Worth, Tex., for Larry A. Thomas.

Before CLARK, Chief Judge, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

A grand jury indicted Billy Wayne Anderson, Jerry Dennis Thomas, Michael Lynn Thomas, and Larry Austin Thomas for various criminal acts in connection with the burning of a furniture warehouse. A jury convicted all four of conspiracy to damage and destroy by fire a building and personal property used in interstate commerce in violation of 18 U.S.C. § 371 (1988) and of maliciously damaging and destroying by fire a building and personal property used in interstate commerce in violation of 18 U.S.C. § 844(i) (1988). Dennis Thomas, Michael Thomas, and Anderson were also convicted of mail fraud in violation of 18 U.S.C. § 1341 (1988). The district court denied the defendants' motions for a new trial. All four defendants appeal their convictions.

## FACTS AND PRIOR PROCEEDINGS

### I. The Government's Proof

The government presented a simple story. Michael and Dennis Thomas, brothers who operated discount furniture stores in Texas, planned with Billy Anderson, a furniture manufacturer in Mississippi, to rent a big warehouse, fill it with furniture, have it burned, and collect on an insurance policy. Michael and Dennis Thomas ultimately offered their cousin, Larry Thomas, $5,000 to burn the building. Larry Thomas, with the help of his friend Archibald Gordon, set the warehouse on fire on March 26, 1984. Michael Thomas, Dennis Thomas, and Anderson then attempted to recover under an insurance policy and used the United States Postal Service to do so. To evaluate the sufficiency of the evidence to prove this story and the harmlessness of evidentiary rulings, we outline the government's case in detail.

Many members of the Thomas family were involved with various discount furniture stores. Most of the Thomases' stores were actually large warehouses. One was D & D Furniture. Eugene Lindsey, also involved in the discount furniture business,

was a key witness. His was the most controversial testimony for the prosecution, and he was the only witness to implicate Anderson directly.

In December 1983, Dennis and Michael Thomas told Lindsey that they were planning with Anderson to have a "professional torch" set fire to their furniture warehouse/store, filled with Anderson's furniture. The two brothers wanted Lindsey's help. To avoid suspicion, the brothers needed furniture from manufacturers other than Anderson. They asked Lindsey to approach other manufacturers on their behalf. Lindsey in turn contacted two furniture manufacturers. Because D & D Furniture had little money, Lindsey asked the companies to accept post-dated checks as payment. According to Lindsey, Anderson sent Dennis Thomas $50,000 to finance the operation of the warehouse.

In January 1984, the Thomas brothers introduced Lindsey to Anderson at a furniture market. Anderson's company, Style–Line Furniture, had rented space at the market. Lindsey testified that Anderson "told me that he had fires in the past and there was nothing to worry about, only way to get caught is if they caught you with matches in your hand." Anderson then allegedly pointed to a picture of the Style–Line factory hanging on a wall or curtain, indicating that insurance proceeds financed the factory. Lindsey told Michael and Dennis Thomas the next day that he did not want to be a part of the scheme. The day before the fire, Dennis Thomas told Lindsey that the warehouse would be closed the next day. Lindsey testified that this indicated to him that the arson would occur then because the warehouse was usually open every day. Lindsey admitted on direct examination that he had been convicted of selling heroin and possessing marihuana in 1973.

The defendants cross-examined Lindsey at length. He denied using any drugs since 1973 or being hospitalized for drug rehabilitation. He admitted to drinking alcohol during the furniture show. The defense attorneys also noted inconsistencies between Lindsey's trial testimony and his

grand jury testimony. The most significant difference was whether Lindsey thought that Anderson referred to having one fire or many fires caused by arson. During the trial, Lindsey testified that Anderson referred to having several fires while during the grand jury investigation Lindsey testified that Anderson referred to having only one fire.

After Lindsey testified, the defendants obtained copies of his medical records. The records revealed that Lindsey gave false testimony about his drug use and hospitalization. The prosecution then recalled Lindsey who admitted giving the false testimony. He apologized to the court for so doing. Lindsey then testified that he had been truthful about the scheme to burn the warehouse.

On cross-examination, Lindsey admitted that he consumed many illegal drugs until 1988, including marihuana, cocaine, LSD, barbiturates, and heroin. From 1971 until 1985 he used heroin intravenously. He also admitted to freebasing cocaine later in this period, after his heroin consumption declined. From 1970 to 1988 he used LSD. From 1970 to 1987 he used methamphetamine intravenously. All during this time, he averaged ten marihuana cigarettes a day. He denied using any drug other than alcohol during the furniture show. He admitted that after an unsuccessful attempt to kill his ex-wife's boyfriend, he checked into a hospital for drug rehabilitation in 1988. He admitted to possessing firearms, in violation of his parole from his 1973 conviction.

The government's other witnesses included two members of the Thomas family. Arsonist Larry Thomas' mother, Hazel Thomas (aunt of Michael and Dennis Thomas) testified that she heard a conversation among Michael Thomas, Dennis Thomas, and her husband Lamond Thomas in late 1983 or early 1984. She testified that Michael and Dennis Thomas said that a man would back them and fill a furniture store, that they wanted to get a big warehouse to fill, and that they would get a big insurance policy and have the warehouse burned.

Larry Thomas' brother Harry Thomas testified that in February or March 1984, Larry Thomas told him that their cousins Michael and Dennis Thomas wanted to have a building filled with furniture burned. Larry Thomas offered Harry Thomas $5,000 to help with the arson. Harry Thomas declined the offer.

Deborah Mack, an employee of D & D Furniture, testified that in early 1984 the Thomas brothers received a large quantity of furniture from Anderson's company. D & D Furniture had not received so much furniture at any other time in the months that she had worked there. The furniture was bought on a quasi-consignment basis. At delivery, D & D Furniture gave Style–Line a check for the furniture. When the furniture sold, Style–Line would deposit the check. Under this system, Style–Line's furniture was covered by D & D Furniture's insurance policy, a normal insurance coverage situation according to the insurance company. Cash on delivery or within a certain number of days was, however, the typical way to sell furniture.

Mack further testified that after the furniture was stored in the warehouse, Dennis and Michael Thomas spoke in their office. Dennis Thomas said, "it would be a damn shame if it all burnt to the ground." Then Michael Thomas closed the office door.

Another D & D Furniture employee testified. The day before the fire one of the Thomas brothers told him that the warehouse would be closed the next day so that the store could be moved to a new location. He was then given a bogus address for the new location.

Linda Pannell, who worked for another furniture manufacturer, testified for the government. Anderson asked her company to send furniture to the Thomas brothers, whom he characterized as good business people. She sold the furniture cash on delivery; the bank returned D & D Furniture's check because of a closed account. Dennis Hawk testified that his father sold D & D Furniture some furniture on a consignment basis. After the fire, Michael Thomas told Hawk that if his father said the furniture was on invoice rath-

er than on consignment, Michael Thomas could recover under the insurance policy for the furniture.

Archibald Gordon, a co-conspirator who entered into a plea agreement, testified that Larry Thomas told him that he, Thomas, had been offered money to burn the warehouse and needed Gordon's help. Gordon agreed to help, and the two set the warehouse on fire. Gordon did not testify as to who recruited Larry Thomas to burn the warehouse. Bernard Milam was a witness also against Larry Thomas. He testified that after the fire at D & D Furniture, Larry Thomas offered to have someone burn Milam's business as a way to solve Milam's financial troubles.

Edgar J. Garrett, Jr., attorney for Michael and Dennis Thomas and briefly the attorney for Style–Line Furniture in their insurance claims, was an additional government witness. Garrett mailed a demand letter to the insurance company on behalf of Michael and Dennis Thomas and on behalf of Style–Line Furniture for loss sustained by the fire.

The insurance company's attorney testified about an examination under oath he took of Anderson. At the examination, Anderson produced a list of invoices of furniture shipped to D & D Furniture and a list of checks received for payment. For two invoices he was unable to identify corresponding checks.

The government also introduced documents supporting its case. The trial court admitted a document showing that in the week before the fire, seven telephone calls were placed to Billy Anderson's factory, Style–Line Furniture, from either Michael Thomas' home or D & D Furniture. A two-minute call was placed from Michael Thomas' home to the factory the day of the fire. The next day, an eight-minute call was placed from Michael Thomas' home to the factory.

The trial court also admitted evidence showing that Anderson's factory had four fires between 1979 and 1982 and evidence showing that Dennis Thomas, Michael Thomas, and their furniture businesses had a history of financial troubles.

## II. The Defendants' Case

To counter the government's proof, Anderson focused on the four previous fires at his factory. He introduced evidence that the four fires were accidental; the insurance reports reflected no evidence of arson. He showed that he had a good financial situation and that he gained nothing from the four previous fires. People in the furniture business testified as to high flammability of the polyfoam in furniture, a problem at the manufacturing stage. Others in the furniture business also testified as to Anderson's good reputation in the business community and as to his good character. Anderson also introduced photographs and testimony contradicting Lindsey's claim that Anderson's space at the January 1984 furniture show had curtains and a picture of Anderson's new plant. A furniture manufacturer with financial difficulties testified that Anderson sold furniture on a consignment basis to him.

Michael Thomas testified on his own behalf and denied recruiting Larry Thomas or anyone else to burn the warehouse and furniture. He denied introducing Anderson to Lindsey. He also testified that he received no benefit from the fire and lost his livelihood. Dennis Thomas testified on his own behalf and denied enlisting Larry Thomas to burn the furniture warehouse. He further denied committing any offense. Larry Thomas testified on his own behalf that he had nothing to do with the burning of the warehouse. He introduced alibi testimony to show that on the day of the fire he was in Mt. Vernon, Texas, either at the bank or the doctor's office.

All four appeal their convictions.

## DISCUSSION

### I. Fed.R.Evid. 404(b)

All four defendants contend that under Rule 404 the trial court should not have admitted evidence of the four previous fires at Anderson's factory in Mississippi. We apply a highly deferential standard to a trial court's evidentiary rulings

and will reverse only for an abuse of discretion. Nevertheless, our review of evidentiary rulings in criminal trials is necessarily heightened. As the Supreme Court has instructed, evidence in criminal trials must be "strictly relevant to the particular offense charged." *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). In addition, " '[t]he admission of irrelevant facts that have a prejudicial tendency is fatal to a conviction, even though there was sufficient relevant evidence to sustain the verdict.' " *United States v. Hays*, 872 F.2d 582, 587 (5th Cir. 1989) (quoting *United States v. Allison*, 474 F.2d 286, 289 (5th Cir.1973), *cert. denied*, 419 U.S. 851, 95 S.Ct. 91, 42 L.Ed.2d 82 (1974)).

■ Evidence of extrinsic offenses is inadmissible to prove that the accused has the propensity or disposition to commit the crime charged. *See* Fed.R.Evid. 404(a). Proof of character is excluded not because it has no probative value, but because it sometimes may lead a jury to convict the accused on the ground of bad character deserving punishment irrespective of guilt. In addition, defendants should not be placed in a position of defending against crimes for which they are not charged. In sum, a fundamental tenet of our criminal justice system is that a jury may not premise a verdict on the defendant's character but only on evidence relevant to the charged crime.

■ Nevertheless, extrinsic act evidence is admissible under Rule 404(b) for limited purposes. Federal Rule of Evidence 404(b) provides:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[1]

A trial court must apply a two-step test before admitting Rule 404(b) evidence. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). We require careful application of the *Beechum* test to protect defendants from unfair prejudice of extrinsic act evidence.

Under the *Beechum* test, a court must first determine that the extrinsic offense evidence is *relevant* to an issue other than the defendant's character, i.e. motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. On appeal, the government presents the four previous fires as evidence of intent—that Anderson intended to cause the fire at the warehouse by showing that he had the same state of mind when he caused the earlier four fires. During trial, the government did not state its Rule 404(b) grounds. *See United States v. Fortenberry*, 860 F.2d 628, 633–34, 636 (5th Cir.1988), *cert. denied*, —— U.S. ——, 111 S.Ct. 1333, 113 L.Ed.2d 265 (1991). The trial court admitted evidence of the four previous fires as evidence of intent, motive, knowledge, plan or scheme, and absence of mistake or accident.

■ For these extrinsic offenses to be relevant to an issue other than character, they must be shown to be offenses and also that they are similar to the charged offense. *United States v. Guerrero*, 650 F.2d 728, 733 (5th Cir.1981). As we stated in *Beechum*:

> Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense,

---

**1.** The Advisory Committee Notes offer little explanation of Rule 404(b). The Notes do state that "[t]he determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403."

it is less likely that he had lawful intent in the present offense.

\* \* \* \* \* \*

Obviously, the line of reasoning that deems an extrinsic offense relevant ... is valid only if an offense was in fact committed and the defendant in fact committed it. Therefore, as a predicate to a determination that the extrinsic offense is relevant, the Government must offer proof demonstrating that the defendant committed the offense. If the proof is insufficient, the judge must exclude the evidence because it is irrelevant.

*Beechum,* 582 F.2d at 911–13. We further explained this threshold requirement in *Guerrero:*

> Where that evidence involves an extrinsic act, its relevancy under *Beechum* is a function of the degree of similarity between the extrinsic act and the offenses charged. This means more than the existence of a common characteristic. For the purposes of the *Beechum* test, the common characteristic must be 'the significant one for the purpose of the inquiry at hand.'

*Guerrero,* 650 F.2d at 733 (citation omitted) (quoting *Beechum,* 582 F.2d at 911); *see also Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988).[2]

■ To meet the threshold determination as to relevancy in this case, the government must prove that all four fires at Anderson's factory were the result of Anderson's arson. In other words, the government must show here that all four fires were offenses and that Anderson participated in the offenses. *See Huddleston,* 485 U.S. at 684–86, 688–90, 108 S.Ct. at 1499, 1501; *United States v. Affjehei,* 869 F.2d 670, 675 (2d Cir.1989) (fact that defendant, charged with narcotics smuggling, took several trips abroad is inadmissible under Rule 404 because government did not prove that prior trips were narcotics-related); *Guerrero,* 650 F.2d at 734–35 (holding that extrinsic evidence was inadmissible to prove intent because government did not prove that the defendant had an unlawful intent in committing the extrinsic offense).

■ The relevancy of the "other acts" evidence offered here is conditioned on whether preliminary facts are established, *i.e.,* whether the four fires were the result of arson by Anderson. The standard of proof of such preliminary facts is relatively light. The proponent of the conditionally relevant evidence need not establish the preliminary facts by a preponderance of the evidence. Rather, the evidence in the case must be sufficient to permit a jury, acting reasonably, to find the preliminary facts by a preponderance of the evidence. *See Huddleston,* 485 U.S. at 688–90, 108 S.Ct. at 1501.

■ The second step mandated by *Beechum* is that "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403." *Beechum,* 582 F.2d at 911; *see also United States v. Zabaneh,* 837 F.2d 1249, 1264 (5th Cir.1988). When requested by a party, a trial court must articulate on the record its findings as to the *Beechum* probative value/prejudice evaluation. *Zabaneh,* 837 F.2d at 1264. If the court does not do so, we remand the case "unless the factors upon which the probative value/prejudice evaluation were made are readily apparent from the record, and there is no substantial uncertainty about the correctness of the ruling." *United States v. Robinson,* 700 F.2d 205, 213 (5th Cir.1983); *see also United States v. Moreno,* 878 F.2d

---

2. In *Huddleston,* the defendant was charged with selling stolen goods in interstate commerce and possessing stolen property in interstate commerce. No one disputed that the goods were stolen. The central issue at trial was whether the defendant knew the goods were stolen. To prove knowledge, the government introduced evidence that the defendant previously had offered to sell televisions at a discounted price. The Supreme Court noted that the sale of the televisions was only relevant if the televisions were stolen. The Supreme Court explained, "[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." 485 U.S. at 689, 108 S.Ct. at 1501.

817, 823 (5th Cir.1988), *cert. denied,* — U.S. ——, 110 S.Ct. 508, 107 L.Ed.2d 510 (1989).

"When the admissibility of external offense evidence is a close question, the court should say more, even without a request; it should pinpoint the element or elements listed in Rule 404(b) that the evidence will prove and explain why the evidence's probative value is not 'substantially outweighed' by its 'undue prejudice.'" *Fortenberry,* 860 F.2d at 634 n. 11.

The district court here did not make any specific rulings on relevancy or prejudice. Nor did the defendants request on-the-record findings. Nothing in the record reflects that the court applied the *Beechum* test.

The trial court did conduct a hearing outside the jury's presence to hear Lindsey's testimony. The defendants objected to the admissibility of Lindsey's testimony which related to the previous fires at Anderson's furniture manufacturing plant. Anderson's attorney and the government

then both offered to submit more evidence regarding admissibility under Rule 404(b). The trial court declined the offers.[3]

Immediately after admitting the testimony about the four fires, the court instructed the jury to consider the evidence of the previous fires only against Anderson. The court further instructed the jury not to use the evidence in deciding whether Anderson committed the charged offenses. If the jury did find that Anderson committed the charged offenses, it could use evidence of the four previous fires as evidence of intent, plan or scheme, or absence of mistake or accident.[4]

After the jury heard all the evidence, the court further instructed the jury as follows:

> [Y]ou may not consider this evidence of similar acts as a substitute for proof that these defendants [Anderson and Larry Thomas] committed any crime charged in this case. Nor may you consider this evidence as proof that either of these

---

**3.** The following exchange took place:

> MR. ROPER [For the Government]: Judge, that's some of the testimony that would relate to the prior fires. I would have to go through all of his testimony step by step. There is several conversations they had about the fire. The main one or the only one with Anderson occurred there at the furniture show.
>
> Then there is several conversations after *that point with Mike Thomas and J.D. and* there is even one that I didn't mention before that. I don't know however the Court wants me to go.
>
> THE COURT: Well, based on what I have heard, I think the one that we have heard about is going to be admissible under 404(b) and perhaps even as—Well, it seems to me that it even may be in some measure admissible *as the declarations of a co-conspirator* which are admissible against the other conspirators in the furtherance of the conspiracy. But—so I think the one we have heard about is pretty clearly admissible under Rule 404(b) although perhaps subject to a limiting instruction. The others without knowing about them, it's hard to predict. If you represent they are of the same general character, within *the same general timeframe I would expect* my ruling to generally be the same.
>
> \* \* \* \* \* \*
>
> MR. CARNES: Yes, your Honor, while we're still dealing with this narrow issue of whether any evidence of a fire in Mississippi is admissible in this trial I'd like to ask him a few

questions about the statements that were made in that regard.

> THE COURT: Well, for what purpose. I don't want to hear full blown testimony. I don't think I need to do that for an offer of proof under Rule 404(b).

**4.** The court specifically instructed the jury as follows:

> Also, since these fires are not alleged in the Indictment, Mr. Anderson is not on trial for any of the conduct to which these claims or proof of loss or drafts relate, so that you may not consider any of this evidence in deciding whether Mr. Anderson committed the acts of which he is accused in the Indictment.
>
> However, you may consider this evidence for other very limited purposes. If you find beyond a *reasonable doubt from other evidence* in the case that Mr. Anderson did commit the acts with which he is charged in the Indictment, then you may consider the evidence, which has been received concerning these earlier fires, to determine whether Mr. Anderson had the state of mind or intent necessary to commit the offenses with which he is charged in the Indictment, and also to determine whether there was a plan or scheme in accordance with which Mr. Anderson acted to commit the offense with which he is charged in the Indictment; or to determine whether any acts, which he is charged in the Indictment, were committed by accident or mistake.

defendants has a criminal personality or bad character. The evidence of these other similar acts was admitted for the more limited purpose of assisting you to determine, if it does, any of the following matters: whether a plan or scheme existed, as alleged in the indictment; whether there was a motive which may have caused either of these defendants to act as alleged; the knowledge or intent, or lack thereof, with which these defendants may have acted; and whether there was mistake or accident which may have caused these defendants to act. You may consider this evidence for these more limited purposes.

■ To evaluate the propriety of admitting the extrinsic act evidence, we must apply the *Beechum* test to the case before us. As explained above, the first step is whether the evidence is relevant to an issue other than character. To be relevant, reasonable jurors must be able to find by a preponderance of the evidence that all four previous fires were the result of arson and that Anderson was involved with the arson. Although the record does not reflect any specific evaluation of the relevancy of the evidence by the trial court, the record does contain conflicting evidence as to relevancy.

Anderson presented insurance reports showing that the causes of the fires were accidental or unknown. The first fire occurred on December 21, 1979. The insurance report listed the cause of the fire as accidental in nature, concluding that the fire originated from a discarded cigarette in the warehouse restroom and spread up the plywood walls. The second fire occurred on July 31, 1980. The insurance report listed the cause of the fire as accidental in nature. The fire originated either from a discarded cigarette or from a spark from the fork lift which landed in the polyfoam and started the fire. The third fire occurred on February 14, 1981. The insurance report listed the cause of the fire as unknown. The fourth fire occurred on April 5, 1982. The insurance report listed the cause of the fire as unknown.

The evidence tending to show that the fires were intentionally set was the testimony of Lindsey. Lindsey testified that (1) Anderson indicated that he had previous experience with arson and (2) Anderson pointed to a picture of his plant on a wall/curtain during a furniture show and said that the plant was built with insurance proceeds.[5] The defendants partly discredited Lindsey's testimony. The defendants attacked Lindsey's ability to perceive accurately the events at the furniture show by getting Lindsey to admit that he was a heavy drug user at the time and that he had alcoholic drinks during the show. The

---

5. Lindsey's testimony which indicates that Anderson intentionally caused the four previous fires at his factory in Mississippi is outlined below. The testimony at the hearing outside the presence of the jury must be considered in our assay because of the court's role under Rule 104(b) which we discuss *infra*.

Outside of the presence of the jury, Lindsey testified as follows:

Q: What happened at that time after you were introduced to [Billy Anderson]?

A: We had a conversation. Basically what it was, Denny was doing most of the talking—they were trying to sell me this program. They were talking about the fire. They still needed a front man. They hadn't found one. I hadn't committed myself. Mr. Anderson came up and showed me pictures on the wall and told me—

THE COURT: He is Mr. Anderson?

A: Mr. Anderson. Mr. Anderson had fires in the past. A million dollars worth of fire. He built this factory, and he showed me the pictures on the wall. This is what he built out of the insurance money on these things.

Q: And when he said that, was there any other discussion about how the fire would take place?

A: Yes, sir. I asked all three of them why they thought they could get away with this. The comment came up from Mr. Anderson that they have to catch you with the matches in your hand.

\* \* \* \* \* \*

LINDSEY: Exact, words. I don't have exact words. He indicated to me that the factory he was displaying on the wall was built from the proceeds of several fires that he had before.

In the presence of the jury, Lindsey testified as follows:

Q: What did Mr. Anderson say in response to you?

A: We—we didn't talk a whole lot. Basically said—Mr. Anderson told me that there was nothing to worry about. I was skeptical about being involved in something. I don't remember exactly what I said to him. I remember he told me that he had fires in the past and there was nothing to worry about, only way to get caught is if they caught you with matches in your hand.

defendants attacked Lindsey's truthfulness by showing that Lindsey gave false testimony about his drug use and hospitalization for drug treatment. As to the second point of Lindsey's testimony, the defendants attacked the accuracy of his perception of the furniture show. The defense introduced photographs and testimony showing that the Style–Line space had no walls, no curtains, no photograph, and no drawing. In addition, the defendants pointed out that Lindsey referred to one fire during his grand jury testimony and to more than one fire during his trial testimony.

The second *Beechum* step is weighing the probative value against the Rule 403 concerns. Nothing in the record specifically reflects that the trial court made this evaluation. The case clearly, however, involves a high risk of prejudice. The danger of unfair prejudice in this case was articulated in *Beechum:*

> One of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense. This danger is particularly great where, as here, the extrinsic activity was not the subject of a conviction; the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged.

582 F.2d at 914 (citations omitted). The risk of prejudice is greater when the extrinsic offenses are similar to the crime charged, although then the probative value of the offenses is greater.

> [T]he more closely the extrinsic offense resembles the charged offense, the greater the prejudice to the defendant. The likelihood that the jury will convict the defendant because he is the kind of

person who commits this particular type of crime or because he was not punished for the extrinsic offense increases with the increasing likeness of the offense. 582 F.2d at 915 n. 20. The risk of prejudice increases greatly when there is little evidence—although enough evidence to satisfy relevancy concerns—proving that the prior act was in fact an offense. In a case similar to this one, the Second Circuit noted the high prejudice of evidence of prior fires which are not proven to the be the result of arson:

> No matter what limiting instruction might be given, the evidence presented a high risk that the jury might nevertheless improperly infer from the occurrence of several fires that the defendant probably set the one alleged in the indictment.

*United States v. Neary,* 733 F.2d 210, 217 (2d Cir.1984). Thus, we are left with a substantial risk of prejudice as well as some probative value.

Whether evidence of the four fires should have been admitted cannot be decided on the record before us. Several errors were made. The court instructed the jury that it could consider the evidence only against Anderson, as proof of intent, motive, knowledge, plan or scheme, and absence of mistake or accident.[6] It is clear that the four fires could not be admitted as evidence under all of these categories. *See generally Beechum,* 582 F.2d at 911–12 n. 15. Three categories were not relevant in the case. No one alleged that the arson at D & D Furniture was the result of mistake or accident or that it was part of a plan or scheme.[7] Further, knowledge was not at issue in the trial.[8] Anderson's knowledge of any fact was not an element of any of the charged offenses or the government's theory. The evidence of the fires is clearly

---

**6.** None of the defendants contest the jury instructions. Further, at trial none requested that the court give an instruction under Rule 104(b). *See generally United States v. Hudson,* 884 F.2d 1016, 1021 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990).

**7.** *See generally* 22 C. Wright & K. Graham, *Federal Practice and Procedure* §§ 5244, 5247 (1977). To use extrinsic evidence as evidence as

a plan, "it is not enough to show that each crime was 'planned' in the same way; rather, there must be some overall scheme of which each of the crimes is but a part." 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5244 at 494 (Supp.1991).

**8.** *See generally* 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5245 (1977).

relevant to intent and partially relevant to motive.[9] In addition, the prosecution did not specify at trial its specific 404(b) grounds for admissibility. *See Fortenberry,* 860 F.2d at 633–34, 636.

The most troubling error in this case is that the court made no ruling that jurors could reasonably find by a preponderance of the evidence that all four previous fires were the result of arson and that Anderson was involved with the arson, especially since he was never charged with a crime nor sued to establish civil liability as to any of the fires. The Supreme Court in *Huddleston* requires that admission of extrinsic offenses under Rule 404(b) be evaluated by the district court under the conditional relevancy test of Rule 104(b) which provides:

> When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

Under Rule 104(b), if the facts upon which relevance is conditioned are not established at the time the evidence is offered, the court is authorized "to admit the evidence 'subject to' proof of the preliminary fact[s]." *Huddleston,* 485 U.S. at 690 n. 7, 108 S.Ct. at 1501 n. 7. If the court admits conditionally relevant evidence subject to later proof of the preliminary facts, the court need not insure sua sponte that the preliminary facts are proven later in the trial. The opponent of the conditionally relevant evidence must " 'move to strike the evidence if at the close of the trial the offeror has failed to satisfy the condition.' " *Id.* (quoting 21 *C. Wright & K. Graham, Federal Practice and Procedure* § 5054 at 269–70 (1977)).

■■■ Rule 104(b) also permits admission of the conditionally relevant evidence if the court determines that the preliminary facts have been sufficiently established at the time the evidence is offered. If the court admits the conditionally relevant evidence over the opponent's objection and does not make the admission subject to later proof of the preliminary facts, the opponent of the evidence need not again move to strike at the end of the trial. In today's case, the district court admitted the evidence of the previous fires over defendants' objection, and the admission was not subject to later proof that the fires were the result of Anderson's arson. Thus, the objection made at that time was sufficient to preserve any error, and no motion to strike was necessary.

Whether reasonable jurors could find that all four fires were the result of arson based on Lindsey's testimony is best left to a trial judge who could personally observe Lindsey. In light of defendants' proof, it is difficult for an appellate court to make a Rule 104(b) determination permitting introduction of the evidence. Also, Anderson's attorney and the government both indicated to the district court that they had additional evidence, which the court chose not to hear, relevant to the *Beechum* inquiry. Such evidence would greatly assist our review of the court's ruling.

Further, it is not clear from the record that the trial court conducted the requisite *Beechum* analysis. Even though the defendants did not request *Robinson* findings, 700 F.2d at 213, when the admissibility of other offense evidence is a close question, as it is in this case, the record still must reflect that the court applied the required test under *Beechum. Fortenberry,* 860 F.2d at 634 n. 11.

In sum, the record before us is insufficient on the issue of the admissibility of evidence as to the four previous fires under Rule 404(b). Also we cannot be confident that the jury instructions cured these problems.

■■■ Thus, we must remand the case involving Anderson's convictions because of the uncertainty in the record.[10] On re-

9. *See generally id.* at §§ 5240, 5242.

10. We do not remand the case against the other three defendants. The evidence was not admitted against the other three. In addition, the evidence against the Thomases was clearly overwhelming. Any error against them is therefore harmless. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Norris,* 910 F.2d 1246 (5th Cir.1990).

mand, the district court must make Rule 104(b) rulings as to whether reasonable jurors could conclude by a preponderance of the evidence that all four fires were the result of arson and that Anderson was involved with the arson. If the court holds that reasonable jurors could so find, the court must "determine whether the evidence's prejudicial effect [substantially] outweighed its probative value, and, if so, whether there is a reasonable possibility that this evidence affected the outcome of the case." *Robinson,* 700 F.2d at 214. The court should also consider the extent to which the jury instructions and the government's closing argument [11] affected the possible prejudicial impact of the evidence.

 There is one other Rule 404(b) question. The trial court admitted other evidence under Rule 404(b), including evidence of civil judgments against Michael Thomas arising out of his failed furniture business pre-dating the fire. The trial court carefully explained to the jury that the evidence was offered to show the financial condition of Michael Thomas at the time of the fire and to assist the jury in determining motive. Michael Thomas argues the trial court erred in admitting the evidence. We disagree.

Michael Thomas' poor financial condition, as evidenced by the civil judgments, was properly admitted under Rule 404(b) to show a motive in participating in a scheme to defraud an insurance company. Although the district court did not specifically follow *Beechum*'s two-step analysis, we need not remand the case against Michael Thomas on this basis. The evidence was clearly admissible under Rule 404(b) as proof of motive. There was no doubt that Michael Thomas was subject to civil judgments in conjunction with his failed furniture business. In addition, the evidence is relevant to a motive to commit arson and

then collect on an insurance policy. The evidence does not have the problems addressed in Rule 403 either. The evidence is not likely to inflame the jury, waste court time, or confuse the issues. These are civil judgments and do not involve facts so similar to the ones in the indictment that there is a substantial danger of unfair prejudice.

The absence of a specific Rule 404(b) ruling under *Beechum* does not require a remand. The issue is not complicated and can easily be resolved from the record. "[N]ot even an objection and formal request can compel the court to spend more than a minimal amount of valuable judicial time on an issue whose outcome is not in doubt." *Fortenberry,* 860 F.2d at 634 n. 11.

## II. Sufficiency of Evidence

 Michael and Larry Thomas appeal on the ground that there is insufficient evidence to support their convictions. In reviewing a challenge to the sufficiency of the evidence, we must decide whether a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *United States v. Yamin,* 868 F.2d 130, 133 (5th Cir.), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3258, 106 L.Ed.2d 603 (1989). We accept all credibility choices that tend to support the jury's verdict. *Id.*

 Michael and Larry Thomas argue that the evidence is insufficient to support their convictions. The testimony and evidence, as set out above, clearly demonstrate that reasonable jurors could properly find the two guilty. Whose story to accept was up the jury. We hold that the evidence is sufficient to support the convictions of Michael and Larry Thomas.

Michael Thomas specifically argues that the evidence was insufficient because Lindsey testified that Michael Thomas was re-

---

We cannot hold, however, that any error against Anderson is harmless. The evidence was specifically admitted against him and was clearly damaging, and the case against him is not overwhelming. We cannot find beyond a reasonable doubt that any error against Anderson did not contribute to the guilty verdict. *Id.*

**11.** In its summation, the government spent a good proportion of its time on the previous fires.

luctant to participate in the plan. Lindsey testified that Michael Thomas said he could succeed by selling furniture and that arson was not necessary for success. Reasonable jurors could believe or disbelieve this testimony. Further, Michael Thomas could have changed his mind and decided to participate in the scheme as shown by the evidence outlined above.

Larry Thomas cites *Mesarosh v. United States*, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956) for the proposition that he deserves a new trial because of the untruthfulness of Lindsey's testimony. In *Mesarosh* the government admitted that its key witness against the defendant had given untruthful testimony in other proceedings. The witness' testimony against the defendant had been wholly discredited. *Id.* at 3, 77 S.Ct. at 2. Because this strongly affected the integrity of a criminal verdict in the federal courts, the Supreme Court reversed the conviction with direction to grant a new trial. *Id.* at 14, 77 S.Ct. at 8. *Mesarosh* does not apply to the issue before us for two reasons. First, Lindsey gave false testimony about an issue going to credibility— his drug use and hospitalization. No one has presented any proof that Lindsey gave false testimony about material facts, and there has been no recantation of testimony as to material facts. As the Supreme Court stated in *Mesarosh*, "new evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." *Id.* at 9, 77 S.Ct. at 5. Second, in *Mesarosh* new evidence came up after the trial. Here all evidence was before the district court; no new evidence has come forth since the jury trial. Thus, there is no need for a new trial since there is no new evidence to present.

### III. Conspiracy Charge

■ Anderson contends that reversible error was committed by submitting instructions pursuant to *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The Supreme Court in *Pinkerton* held that a defendant could be found guilty of substantive offenses if the defendants were parties to an unlawful conspir-

acy and the substantive offenses charged were in fact committed in furtherance of it. Anderson argues that the charge in this case was overly broad and allowed the jury to convict for substantive offenses that were not reasonably foreseeable. We approved a form of the *Pinkerton* instruction given in *United States v. Basey*, 816 F.2d 980, 998 n. 35 (5th Cir.1987). The strongest denial of the appellant's contention, however, is found in the fact that the burning of the warehouse and the commission of the insurance fraud by use of the mails were at the heart of the conspiracy agreement. They were far from peripheral offenses. Hence, the offenses were foreseeable, and giving the *Pinkerton* instruction was no error.

### IV. Suggestive Identification Procedure

■ The trial court conducted a hearing outside the presence of the jury to hear the testimony of Lindsey. Lindsey testified that he had been introduced to Anderson at a furniture show and that Anderson was in the courtroom. The prosecutor walked over to the defense counsel's table, pointed to Anderson, and asked "Is this Mr. Anderson right here?" Lindsey answered affirmatively. Anderson's counsel moved for a mistrial, which the court denied. The court instructed the prosecutor not to use the procedure again. The witness identified Anderson before the jury over the renewed objection of the defense, but the suggestive action of the prosecutor was not repeated.

■ We hold that this procedure was impermissibly suggestive. But we must decide whether under the totality of the circumstances the suggestiveness leads to a substantial likelihood of irreparable misidentification. *Herrera v. Collins*, 904 F.2d 944 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 307, 112 L.Ed.2d 260 (1990). We must conclude that no substantial likelihood of irreparable misidentification occurred in this case. After a personal introduction, Lindsey and Anderson had a cordial conversation lasting five to seven minutes at a furniture show. Other evidence

corroborated Lindsey's testimony that Anderson is the person with whom he spoke in the presence of the Thomas brothers. Further, another witness identified Anderson in court as the person who had shipped furniture to D & D Furniture.

### V. Evidence of a Pending Lawsuit

Anderson, Dennis Thomas, and Michael Thomas argue that the trial court committed reversible error in excluding evidence of a pending lawsuit by the Thomas brothers against the insurance company. The court refused to allow the defense counsel to cross-examine government witness Garrett, who at one time was the attorney for both the Thomas brothers and Style–Line Furniture, about the suit Garrett had filed. The purpose was to show bias on the part of government witnesses whom the insurance company had paid for their work.

 Any incentive a witness may have to falsify his or her testimony is relevant to the witness' credibility and the weight the jury should accord to the testimony. *See Myers v. Pennzoil Co.,* 889 F.2d 1457, 1461 (5th Cir.1989). A party challenging a witness generally is given the opportunity to pursue all relevant lines of inquiry aimed at discovering and disclosing bias. The district court has broad discretion in determining how bias may be proved and what extrinsic evidence is material to that purpose. *Id.* The court's judgment will be disturbed only upon proof of abuse of discretion.

 The court here ruled that even if marginally relevant, the evidence of the pending civil lawsuit should be excluded under Rule 403 because it would confuse the issues for the jury or unduly consume time. The court did not abuse its discretion in refusing to admit the testimony. The defendants do not point to any testimony that they dispute or which they contend was false. The financial ties the government witnesses at issue had had with the insurance company were brought out during cross-examination of those witnesses. In addition, none of the witnesses were principal witnesses.

### VI. Miscellaneous Evidence Issues

 Three evidentiary issues remain as to defendants Dennis and Jerry Thomas. First, Dennis Thomas argues that he was denied the ability to re-cross examine Anderson's wife. Dennis initially waived cross-examination of her. After redirect examination by Anderson and re-cross examination by the government, and after the court told the witness she was excused, Dennis Thomas informed the court that he had "a couple of questions." The court refused to allow further questioning.

Second, Dennis Thomas asserts that the court erred in failing to admit a statement made by his attorney, Garrett, to him. On direct, Dennis Thomas's attorney sought to have Dennis Thomas testify as to what Garrett told him to establish Dennis Thomas' lack of criminal intent to defraud.

Third, Larry Thomas argues that the court improperly limited his cross-examination as to his theory that his deceased father committed the arson.

We do not reach the merits of these claims on appeal because the defendants did not preserve error for appeal. Under Rule 103(a)(2),

> (a) Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (2) In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

On all three matters, the defendants did not make an offer of proof and the substance of the excluded evidence is not apparent from the record. There is no showing of substantial rights of the parties affected in the exclusion of this evidence.

### VII. Remaining Issues on Appeal

Anderson appeals on two other issues: that the evidence is insufficient to support his conviction and that the trial court should have granted him a severance. These issues may or may not become moot

if the district court, after evaluating the admission of the evidence of the four fires, orders a new trial. We reserve ruling on these issues.

## CONCLUSION

We AFFIRM the convictions of Larry Thomas, Dennis Thomas, and Michael Thomas. As for Billy Anderson's conviction, we hold that the trial court did not err in submitting the *Pinkerton* charge to the jury, that the in-court identification of Anderson is not reversible error, and that the trial court did not err in restricting his cross-examination of Garrett.

The record is insufficient for us to rule on whether the trial court properly admitted the evidence against Anderson of the four previous fires. We therefore RE-MAND with instructions for a precise application of the *Beechum* test to the evidence relating to the four previous fires. First, after the government has stated its specific Rule 404(b) grounds for admissibility, the district court must determine the Rule 404(b) categories to which the evidence is relevant. Then the court must make a Rule 104(b) ruling as to whether jurors could reasonably conclude by a preponderance of the evidence that all four fires were the result of Anderson's arson. If the court holds that the evidence meets this first *Beechum* step as to relevancy, it then must decide whether the evidence's probative value is substantially outweighed by its prejudicial effect. If the court determines that the probative value was substantially outweighed, then the court must decide whether there is a reasonable possibility that the evidence affected the outcome of the case. In making this determination, the court should consider the effect of the jury instruction and the government's closing argument. If the court finds that the evidence improperly affected the outcome of the case, the court must order a new trial. If the court finds that the evidence did not improperly affect the outcome of the case, "[t]he trial judge shall certify to us his findings and conclusions. The record shall be supplemented by the on-the-record determination herein pre-scribed, and by any materials submitted by the parties to the district court. Following such filing, the clerk will set a schedule for supplementary briefing and the matter will be returned to this panel for disposition." *Robinson*, 700 F.2d at 214 n. 12.

We reserve ruling on Anderson's remaining two claims on appeal.

AFFIRMED IN PART, REMANDED IN PART WITH INSTRUCTIONS.